KOBAYASHI SUGITA & GODA, LLP
CRAIG K. SHIKUMA            4018
JOSEPH A. STEWART           7315
AARON R. MUN                9779
JESSE FRANKLIN-MURDOCK      10778
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Phone: 808-545-5700
Fax:   808-535-5799
Email: cks@ksglaw.com; jas@ksglaw.com
       arm@ksglaw.com; jfm@ksglaw.com

Attorneys for Defendants
NEXTGEN LABORATORIES, INC., OHANA GENETICS, INC.,
HEIDE MAKI, and STEPHANIE SIMBULAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WIHC LLC dba ALOHA TOXICOLOGY, <br><br> Plaintiff, <br><br> vs. <br><br> NEXTGEN LABORATORIES, INC., OHANA GENETICS, INC., HEIDI MAKI, STEPHANIE SIMBULAN, and DOE DEFENDANTS 1-20, <br><br> Defendants. | CIVIL NO. 18-00261-JMS-RLP <br><br> DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED VERIFIED COMPLAINT; CERTIFICATE OF SERVICE <br><br> Hearing <br> Date:  December 3, 2018 <br> Time:  9:00 a.m. <br> Judge: J. Michael Seabright |

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED VERIFIED COMPLAINT

1618296_4

I.  **INTRODUCTION**

Contrary to Aloha Tox's suggestion, Defendants' apparent lack of "credibility" cannot create Federal subject matter jurisdiction where there is none. And the "outrageousness" of Defendants' alleged conduct cannot overshadow Aloha Tox's failure to meet essential elements of its claims. Aloha Tox's allegations that Defendants "stole" clients of Aloha Tox does not satisfy the requirement that a plaintiff plead harm to competition generally. Similarly, it does not show that Aloha Tox actually conferred a benefit upon Defendants. As discussed in Defendants' Motion to Dismiss [ECF No. 63] ("Motion"), Aloha Tox's First Amended Complaint fails to state claims as to all but Counts II and IV, which are properly remanded to state court.

II.  **ARGUMENT**

    A.  **DTSA and RICO** – Aloha Tox's service is provided to customers only in Hawaii; Aloha Tox's test is unmanageable and would undermine congress' intent to limit the scope of the commerce power.

In order to give effect to the jurisdictional requirement that a trade secret be related to a service "used in" interstate commerce, Aloha Tox's theory must be rejected. It is undisputed that Aloha Tox provides services to customers located only in Hawaii. Despite the fact that its service is purely local, Aloha Tox insists that its service is used in interstate commerce by pointing to incidental aspects of its general business: using the internet, vendor relationships, using the mail, and employee air travel. But the jurisdictional test is not whether Aloha Tox's business

1

involves interstate commerce, but whether Aloha Tox's service is used in interstate commerce.  By Aloha Tox's measure, given "the current state of the world," the "nexus requirement" would be satisfied in virtually every case.

Aloha Tox states that "the Internet plays a significant role in Aloha Toxicology's **business**" – but in this day and age, one would be hard pressed to identify a business that isn't dependent on the internet for one thing or another.  Aloha Tox asserts that there is "voluminous case law supporting the proposition that making use of the Internet engages a business in interstate commerce."  MIO at 10.  But that misses the point.  The test is not whether a business makes use of the internet, or even if a business is engaged in interstate commerce generally, but whether the trade secret at issue relates to a service that is used in interstate commerce.

Aloha Tox's argument is deficient under its own case law cited.   For example, United States v. Sutcliffe, explains that the internet is "both the means to engage in commerce and the method by which transactions occur."  505 F.3d 944, 953 (9th Cir. 2007).  Aloha Tox also states that its "customers communicate with Aloha Toxicology through the internet, including emails and phone calls, regarding Aloha Toxicology's services."  MIO at 14.  Again, however, all of Aloha Tox's clients are located within the state of Hawaii.  Just because the internet is a means to engage in interstate commerce and a method by which transactions can occur

2

with customers, does not mean that Aloha Tox's purely intrastate services are automatically deemed interstate services. The same logic applies to Aloha Tox's arguments as to employee travel to the mainland and relationships with vendors located on the mainland. Allowing such incidental and indirect activities are sufficient to satisfy the requirement that a trade secret must be related to "services used in interstate commerce" would effectively render the jurisdictional bar meaningless.

Aloha Tox's services are solely provided to Hawaii customers and within the State of Hawaii. Aloha Tox's market is located wholly within the State of Hawaii. Aloha Tox's incidental business activities that may involve out-of-state contacts are not enough to transform intrastate nature and character of the services it provides to its clients. See Kallen v. Nexus Corp., 353 F.Supp. 33, 36 (N.D. Ill. 1973) (concluding that defendants' service, *i.e.* a bar preparation course, was "given only in the State of Illinois," and that "such **incidental activities** as advertising, solicitation, preparation of course materials, and the travel of non-Illinois lecturers will not alter the **intrastate character of the course itself**. Hence, the acts complained of occur in a **market that is located wholly within the State of Illinois** and is neither in the flow of interstate commerce or at either end of that flow.") (emphasis added).

3

Further, Aloha Tox's reliance on <u>Space Sys./Loral, LLC v. Orbital ATK, Inc.</u>, 306 F.Supp.3d 845 (E.D. Va. 2018) is unavailing as the "used in interstate commerce" requirement was not disputed by the defendant in that case.  Aloha Tox's contention that "vendor relationships" satisfies the interstate commerce requirement is also without merit.  The jurisdictional inquiry focuses on the nature of the **services** that Aloha Tox provides to customers, not the nature of Aloha Tox's business activities that may tangentially relate to interstate commerce.  <u>See Kallen</u>, 353 F.Supp. at 36 ("Furthermore, the fact that an intrastate business has customers who come from another state before **receiving local services** does not in itself show any effect on interstate commerce.") (emphasis added); <u>Bruner v. Timberlane Manor Ltd. P'ship</u>, 155 P.3d 16, 31 (Okla. 2006) ("The facts that the nursing home buys supplies from out-of-state vendors rather than in-state vendors and uses internet and long distance telephone lines do not demonstrate a substantial impact on interstate commerce and are insufficient to impress interstate commerce regulation upon the admission contract for residential care between the Oklahoma nursing home and the Oklahoma resident patient.").

Therefore, Aloha Tox fails to sufficiently plead the required nexus to interstate commerce, and the FAC should be dismissed under FRCP 12(b)(1).

      B.      **Unfair Competition** – There is no harm to competition; Aloha Tox's theory would mean that harm to any Hawaii company would automatically constitute unfair competition.

Aloha Tox argues that the harm that Defendants are alleged to have inflicted upon Aloha Tox's business somehow translates to harm to competition. However, not only does Aloha Tox fail to adequately allege harm to competition in its FAC, see Motion at 11-17, but its arguments lack merit.

Aloha Tox argues that Defendants "create[d] incentives for clients to use Defendants' services over their competitors . . ." MIO at 17-18. However, the FAC contains no allegations of incentives provided by Defendants, let alone allegations about how the alleged actions resulted in Defendants being able to offer such incentives unlike other competitors. As explained in the Motion, at most, Aloha Tox has alleged harm to a single competitor: Aloha Tox. That is not enough to adequately allege harm to competition for purposes of a UMOC claim.

Aloha Tox continues to misconstrue Gurrobat v. HTH Corp., 133 Hawai`i 1, 323 P.3d 792 (2014). In Gurrobat, the illegal conduct – unlawfully withholding wages from employees – gave the defendants an "illegal business advantage over law-compliant hotel**s**, restaurant**s and** banquet service provider**s**." Id. at 22, 323 P.3d at 813 (emphasis added). Here, in contrast, the only competitor that Aloha Tox alleges has been harmed is itself.

5

Further, the Hawaii Supreme Court's decisions in <u>Gurrobat</u> and <u>Hawaii Medical Association v. Hawaii Medical Service Association, Inc.</u>, 113 Hawai`i 77, 148 P.3d 1179 (2006), are distinguishable as they involved claims that the defendants created unfair financial incentives for customers to do business with the defendant (or to not do business with the plaintiff).  Here, in contrast, Aloha Tox does not allege that Defendants created any unfair financial incentives for customers to choose to work with Defendants.  Even assuming *arguendo* that Defendants obtained and used Aloha Tox's trade secrets, Defendants would have had, at most, the **same** information as Aloha Tox did.  As such, Aloha Tox fails to allege that Defendants' conduct allowed it to offer anything more than what Aloha Tox could offer in order to unfairly attract customers.

Aloha Tox's reliance on <u>Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n</u>, 884 F.2d 504 (9th Cir. 1989) is also misplaced.  As a preliminary matter, the <u>Les Shockley</u> court did not find injury to competition in the market for anesthesia services – the court merely cited that that was its prior opinion in <u>Oltz v. St. Peter's Cmty. Hosp.</u>, 861 F.2d 1440 (9th Cir. 1988).

In <u>St. Peter's</u>, defendant St. Peter's Community Hospital ("Hospital"), which enjoyed an 84% market share of general surgical services in the relevant area, employed two types of professionals who could give anesthesia to patients: (1) M.D. anesthesiologists (four total), and (2) nurse anesthetists (one total, the

6

plaintiff). Id. at 1443.  The plaintiff (nurse anesthetist) billed the hospital as an independent contractor and many doctors within the Hospital grew to prefer his services over the M.D. anesthesiologists, who charged significantly more for their services.  Id.  After the M.D. anesthesiologists threatened to quit, the Hospital entered into an exclusive contract for anesthesia services with the M.D. anesthesiologists, and terminated plaintiff's contract.  Id. at 1444.  After the four M.D. anesthesiologists settled, the court concluded that the Hospital's exclusive contract resulted in injury to competition under the Sherman Act.  Id. at 1447.  Specifically, the court found that "the exclusive anesthesia contract and the termination of [plaintiff] had actual detrimental effects on competition among anesthesia service providers in that area . . . . Some patients and surgeons who preferred the services of [plaintiff] were hindered from obtaining them.  Furthermore, the price of anesthesia services and the incomes of the M.D. anesthesiologists rose dramatically because of the challenged restraint."  Id. at 1448.

St. Peter's is meaningfully distinguishable from the present case.  In St. Peter's, the harm to competition stemmed from the Hospital's exclusive dealing contract with the M.D. anesthesiologists.  Importantly, the harm was twofold, (1) it harmed consumers at the Hospital who could no longer select nurse anesthetists to administer anesthesia, and (2) it harmed the market for anesthesia providers

7

because only M.D. anesthesiologists could work at the Hospital.  See id. at 1447.  Here, in contrast, the "harm" is strictly limited to Aloha Tox.  Aloha Tox fails to allege any conduct by Defendants that restricts consumers from being able to choose Aloha Tox as their service provider.  Aloha Tox also fails to allege any conduct by Defendants that restricts Aloha Tox from providing services in Hawaii.  Aloha Tox fails to allege any conduct by Defendants which prevented any other competitors in the toxicology business from competing.  In short, while Aloha Tox alleges that Defendants "stole" Aloha Tox's clients, those customers are, and have always been, free to use Aloha Tox or any other toxicology lab in Hawaii.

Lastly, Aloha Tox's citation to the restricted transcript of Dwayne Kojima's testimony is improper in that it quotes irrelevant testimony regarding "delay" in servicing the State.  See MIO at p. 25.  Contrary to Aloha Tox's suggestion, the "delay" was not caused by Defendant's conduct, but rather by Ronald Li's failed proficiency test and Dr. Kl-Khoury's subsequent decision that Aloha Tox indefinitely cease testing, as was confirmed by Mr. Kojima's testimony.

  C. **Tortious Interference** – Aloha Tox concedes that it had no contracts; there has been no breach; this claim is necessarily preempted.

Aloha Tox's statement that it "unquestionably had contractual relationships with all of their clients," MIO at 26, is not enough to survive dismissal.  In order to establish intentional interference with contractual relations, Aloha Tox must also prove that Defendants actions led to a "subsequent **breach of the contract** by the

8

1618296_4

third party[.]" Eurus Genomics, Inc. v. Genesys Techs., Inc., No. CIV 06-00651SOMLEK, 2007 WL 764322, at *3 (D. Haw. Mar. 9, 2007) (emphasis added); see also Weinberg v. Mauch, 78 Hawai`i 40, 50, 890 P.2d 277, 287 (1995) ("to maintain a tortious interference with contract claim under Burgess, the plaintiff must show that a breach has occurred").

Importantly, courts recognize that "[t]he distinction between breaching contracts terminable at will and those not terminable at will is the standard applied in the Restatement (Second) of Torts for determining liability for the tort of intentional interference with contractual relations." Jet Courier Serv., Inc. v. Mulei, 771 P.2d 486, 496 (Colo. 1989) (citing Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc., 690 P.2d 207, 210–11 (Colo. 1984) (noting that the Restatement (Second) of Torts "provides less protection for contracts terminable at will because an interference with a contract terminable at will is an interference with a future expectancy, not a legal right")).

As such, a claim for intentional interference with contractual relations should be dismissed where the contract at issue is "at-will," *i.e.* where there is no breach. See, e.g., Kosson v. Algaze, 203 A.D.2d 112, 112, 610 N.Y.S.2d 227, 228 (1994), aff'd, 84 N.Y.2d 1019, 646 N.E.2d 1101 (1995) ("The causes of action for breach of contract and intentional interference with contractual relations were properly dismissed since the plaintiff failed to submit any proof that he was

9

employed by defendant St. Luke's/Roosevelt Hospital for a fixed duration pursuant to a written contract of employment. The plaintiff was an at-will employee whose employment was terminable at any time").

Therefore, Aloha Tox's tortious interference with contractual relations claim should be dismissed.

Further, Aloha Tox's tortious interference claim is preempted by HUTSA because it is necessarily dependent on Aloha Tox's misappropriation of trade secrets claim. Specifically, Aloha Tox alleges that the names of its clients and client contact information are its "trade secrets." Further, it alleges that misrepresentations were made to those clients **using the purportedly misappropriated trade secrets**, *i.e.* the names and contact information of the clients. While Defendants do not agree that this contact information is a trade secret, it is indisputable that the alleged tortious conduct could not have been effectuated without use of the contact information. As such, the tortious interference claim necessarily relies on the allegations of trade secret appropriation.

Specifically, as to tortious interference, Aloha Tox alleges that Maki and/or Simbulan induced Aloha Tox's "Clients" to terminate their relationships with Aloha Tox. *See* FAC ¶ 123. Importantly, however, as to misappropriation, Aloha Tox also alleges that "Client information such as Client names" constitute "trade

10

secrets." *See* FAC ¶ 64. Logically, then, they only way that Maki and/or Simbulan could have spread lies to Aloha Tox's clients, was if they obtained and used Aloha Tox's client information, *i.e.* the alleged "trade secrets." Put another way, in order for Maki and/or Simbulan to have fed lies to Aloha Tox's clients, Maki and/or Simbulan must have known who those clients were in the first place and who to contact.

"[T]he HUTSA preempts claims when the alleged injury is **based on** the **improper acquisition, disclosure, or use** of confidential and/or commercially valuable information, whether or not that information rises to the level of a statutorily-defined trade secret." BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Inc., 123 Hawai`i 314, 328, 235 P.3d 310, 324 (2010) (emphasis added). It is "axiomatic" that, if Aloha Tox considers its client information to be "trade secrets," then allegedly tortious direct communication with Aloha Tox's clients necessarily involves the improper use of Aloha Tox's client information. See BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., 780 F.Supp.2d 1061, 1077 (D. Haw. 2011). Therefore, this claim is preempted.

> D. **Conversion** – Alleging use of equipment to misappropriate trade secrets requires preemption.

Aloha Tox misapplies the law of conversion. Aloha Tox contends that Maki and Simbulan's unlawful purchase and retention of electronic equipment after their departure constitutes unlawful acts independent of the misappropriation of trade

11

secrets claim.  *See* MIO at 28.  However, the purchase and retention of equipment only goes to the first and fourth elements of a conversion claim – i.e. a taking and wrongful detention after demand.

Importantly, the third element requires Aloha Tox to prove "an illegal **use or abuse** of the chattel."  JN Group Holdings, Inc. v. Ryan, No. CV 17-00375 ACK-KJM, 2018 WL 485937, at *6 (D. Haw. Jan. 19, 2018) (emphasis added).  As to "use or abuse" of the computer equipment, Aloha Tox alleges that Maki used the equipment to misappropriate trade secrets.  See FAC ¶ 131.  As such, Aloha Tox's conversion claim necessarily relies on alleged misappropriation of trade secrets, and is therefore preempted by the HUTSA.  See BlueEarth, 780 F.Supp.2d at 1077.

E.     **Unjust Enrichment** – Aloha Tox relies on a tortured application of the facts to the law.

Aloha Tox fails to show how it "conferred" a benefit upon NextGen and/or Ohana.  Aloha Tox quotes two-and-a-half pages of allegations apparently showing the effort Aloha Tox used to develop its business, see MIO at p. 32-34, and argues that "[t]hese are actions taken by Plaintiff that benefit NextGen and Ohana."  See MIO at 35.  But an essential element to a claim for unjust enrichment is that Aloha Tox must have conferred that benefit upon NextGen and Ohana.  That element is missing here.

12

F. **Spoliation** – Aloha Tox's argument is circular.

Aloha Tox's argument is circular: it argues that its spoliation claim is not subject to the heightened pleading requirements of FRCP 9(b) because Hawaii has not yet recognized the heightened pleading standard in state or federal court, due to the fact that the Hawaii Supreme Court has not yet adopted the tort of spoliation of evidence. Aloha Tox then argues that intentional spoliation does require heightened pleading, while negligent spoliation does not. But Aloha Tox also claims that the Court has proof that Defendants "intentionally" deleted "potentially critical evidence" related to its claims. See MIO at 2.

Aloha Tox argues against a heightened pleading standard on the basis that Hawaii doesn't even recognize the underlying claim in the first place. Aloha Tox can't have it both ways. Aloha Tox also argues that negligent spoliation does not have a heightened pleading standard, but claims that Defendants "intentionally" destroyed evidence.

Due process requires that Defendants are given "fair notice of what the plaintiff's claim is and the grounds upon which the claim rests." Au v. Au, 63 Haw. 210, 221, 626 P.2d 173, 181 (1981). Is it intentional spoliation? Negligent spoliation? Either way, is such a claim even recognized in Hawaii? If so, is it subject to a heightened pleading standard, or not?

13

This Court must either make an express determination that Hawaii recognizes the tort of spoliation or dismiss this claim. At a minimum, Aloha Tox should be required to amend its claim to indicate whether it is alleging intentional or negligent spoliation.

### III.  CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant this Motion [ECF No. 63].

Dated: Honolulu, Hawaii, November 19, 2018.

/s/ Craig K. Shikuma
CRAIG K. SHIKUMA
JOSEPH A. STEWART
AARON R. MUN
JESSE FRANKLIN-MURDOCK

Attorneys for Defendants
NEXTGEN LABORATORIES, INC., OHANA GENETICS, INC., HEIDI MAKI, and STEPHANIE SIMBULAN