IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIC LLC dba ALOHA TOXICOLOGY,<br><br>               Plaintiff,<br><br>  vs.<br><br>NEXTGEN LABORATORIES, INC.; OHANA GENETICS, INC.; HEIDI MAKI; STEPHANIE SIMBULAN; and DOE DEFENDANTS 1-20,<br><br>             Defendants. | Civ. No. 18-00261 JMS-RLP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, ECF NO. 63 |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, ECF NO. 63

## I. INTRODUCTION

On September 12, 2018, Plaintiff WHIC LLC dba Aloha Toxicology

("Plaintiff" or "Aloha Toxicology") filed a nine-count First Amended Verified

Complaint ("FAC") alleging claims against Defendants NextGen Laboratories, Inc.

("NextGen"), Ohana Genetics, Inc. ("Ohana Genetics"),[1] Heidi Maki ("Maki"),

---

[1] NextGen and Ohana Genetics are affiliated companies. During the relevant time period, NextGen purchased Ohana Genetics. For sake of brevity, the court will not distinguish between these two Defendants unless relevant, and will refer to NextGen as Ohana Genetics throughout the order.

and Stephanie Simbulan ("Simbulan") (collectively, "Defendants").  FAC, ECF

No. 54.

Currently before the court is Defendants' Motion to Dismiss for lack

of subject matter jurisdiction and for failure to state a claim.  ECF No. 63.  Based

on the following, the Court GRANTS IN PART and DENIES IN PART

Defendants' Motion to Dismiss, with leave to amend.

## II.  BACKGROUND

### A.    Factual Background

The factual allegations[2] in the FAC are as follows:  Aloha Toxicology

is a drug testing lab formed in 2006.  FAC ¶ 11, 17.  Aloha Toxicology's clients

include physicians, clinics, substance abuse treatment programs, rehabilitation

facilities, and individuals across Hawaii.  *Id.* ¶ 19.  To obtain and serve those

clients, Aloha Toxicology has invested "time, skill, and resources" into "gathering,

developing, and compiling [client] information," such as services requested,

financial data, and history of client accounts.  *Id.* ¶ 21, 22.  Aloha Toxicology's

client lists are only accessible on Aloha Toxicology computers after logging in

with a password.  *Id.* ¶ 24.  Under Aloha Toxicology's Employee Handbook, trade

---

[2] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

secrets are to remain confidential, trade secrets are expressly defined, and client lists are included in the definition.  *Id.* ¶¶ 26-28.  Maki and Simbulan were aware of this provision of the employee handbook.  *Id.* ¶¶ 29-30.

Maki was paid a full-time salary to work as the sales and operations manager of Aloha Toxicology from April 2014 until June 2018.  *Id.* ¶¶ 31, 33.  Simbulan was paid a full-time salary to work as a clinical laboratory specialist at Aloha Toxicology from October 2017 to June 2018.  *Id.* ¶¶ 32-33.  While being paid to work full-time at Aloha Toxicology, Maki and Simbulan began working for a competitor, Ohana Genetics.  *Id.* ¶ 34.  Neither Maki nor Simbulan informed Aloha Toxicology's owners that they were working for a competitor.  *Id.* ¶¶ 36-37.  While setting up a new lab at Ohana Genetics, Maki and Simbulan came to work as little as one day per week at Aloha Toxicology and lied to its employees by saying that they were working on a research project at a partner (not a competitor) lab.  *Id.* ¶¶ 38-39.

In June 2018, Maki told Aloha Toxicology employees that Aloha Toxicology could be shut down by an accreditation agency for up to six months, employees would be laid off during that shutdown, and the owners did not want to continue the business because of the issues with the accreditation agency.  *Id.* ¶¶ 47, 48.  Maki told Simbulan and Ronald Li, an Aloha Toxicology employee, to

resign to protect their licenses and future job prospects from the stigma of a "bad lab" being attached to them. *Id.* ¶ 49. Maki told another employee, Andee Okamura, who was not yet certified, that she could state that she was laid off by Aloha Toxicology in order to obtain unemployment benefits. *Id.* Maki told Aloha Toxicology employees that she had found another company, Ohana Genetics, to take on Aloha Toxicology's clients and directed employees to send samples for testing to Ohana Genetics. *Id.* ¶ 50. In actuality, the owners had no intention to shut down the lab or to send samples to a competitor lab. *Id.* ¶ 51. Shortly thereafter, Maki resigned from Aloha Toxicology, telling the owners that the lab was no longer a "viable business" because of the failure of a proficiency test, loss of key personnel, and the inability to test samples. *Id.* ¶ 53. After resigning, Maki never returned several computers, printers, a hotspot, and related equipment that she had purchased with Aloha Toxicology funds. *Id.* ¶¶ 54-55.

As a result of Maki's actions, the lab at Aloha Toxicology was temporarily shut down and "all or a substantial number" of its clients were now doing business with Ohana Genetics. *Id.* ¶¶ 57-58.

///

///

///

4

**B.     Procedural History**

On July 5, 2018, Plaintiff filed a nine-count Verified Complaint, seeking damages and injunctive relief.  ECF No. 1.  On July 23, 2018, Plaintiff filed a Motion for Preliminary Injunction, ECF No. 10, and hearings were held on that motion on August 22 and September 4, 11, 12, 2018.  *WHIC LLC v. NextGen Labs., Inc.*, 341 F. Supp. 3d 1147, 1157 (D. Haw. 2018).  "The court heard testimony from eight witnesses, reviewed the declarations of three witnesses, and admitted numerous exhibits into evidence."  *Id.*  On September 17, 2018, the court granted the preliminary injunction.  *Id.* at 1168.

Meanwhile, Plaintiff filed the FAC on September 12, 2018, solely to clarify and allege that conduct occurred in interstate commerce.  ECF No. 54.  The FAC contains the following claims: Violation of Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 (Count I); Violation of Hawaii Uniform Trade Secrets Act ("HUTSA"), HRS chapter 482B (Count II); Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (Count III); Breach of the Duty of Loyalty (Count IV); Unfair Competition, HRS chapter 480 (Count V); Tortious Interference with Existing Contractual Relations (Count VI); Conversion (Count VII); Unjust Enrichment (Count VIII); and Spoliation of Evidence (Count IX).  ECF No. 54.

On September 26, 2018, Defendants filed the instant Motion to Dismiss.  ECF No. 63.  Defendants move to dismiss: (1) the entire FAC for lack of subject matter jurisdiction; (2) Counts V, VI, VII, and IX in their entirety for failure to state a claim; and (3) Count VIII only as to NextGen and Ohana Genetics for failure to state a claim.  ECF No. 63-1 at 5.  On November 12, 2018, Plaintiff filed its Opposition.  ECF No. 84.  On November 19, 2018, Defendants filed their Reply.  ECF No. 90.  A hearing was held on January 14, 2019.

## III.  <u>STANDARD OF REVIEW</u>

### A.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction.  The court may determine jurisdiction under Rule 12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of a case."  *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).  The moving party "should prevail [on a motion to dismiss] only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation and quotation marks omitted); *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

**B.     Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners*, LLC, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet — that the court must accept as true all of the allegations contained in the complaint — "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer

7

"the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 679.

## IV.  DISCUSSION

Defendants argue that the court lacks subject matter jurisdiction because Plaintiff has not alleged a sufficient nexus to interstate commerce to implicate federal statutes.  ECF No. 63-1 at 5.  The court disagrees and finds that it has subject matter jurisdiction.  Defendants also argue that Counts V, VI, VII, and IX should be dismissed in their entirety, and that Count VIII should be dismissed, but only as to NextGen and Ohana Genetics.  *Id.*  The court agrees in part and dismisses Counts V, VI, and IX in their entirety, and Count VIII as to NextGen and Ohana Genetics.[3]  The court grants Plaintiff leave to amend the FAC.

///

///

---

[3]  Both Defendants and Plaintiff reference matters outside of the pleadings.  Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Exercising its discretion, the court excludes all matters outside of the pleadings, and thus will not convert this motion to one for summary judgment.  *See Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011) (finding the decision to convert a Rule 12 motion to one for summary judgment is discretionary).

8

A.      **Subject Matter Jurisdiction: Nexus to Interstate Commerce**

Defendants argue that Plaintiff had not alleged a sufficient nexus to interstate commerce under DTSA and RICO, and thus those claims fail.  *Id.* at 7-8. As those claims are the sole basis for federal subject matter jurisdiction, Defendants argue that the court has no remaining jurisdiction and should dismiss the FAC in its entirety.  *Id.* at 8.

An owner of a misappropriated trade secret may bring a civil action under DTSA if "the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1). RICO predicate acts include unauthorized uses of trade secrets, where the trade secret "is related to a product or service used in or intended for use in interstate or foreign commerce."  *See* 18 U.S.C. §§ 1832(a), 1961(1).

"[T]he Supreme Court has recognized [that] the ordinary meaning of 'related to' is 'broad': 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'"  *United States v. Agrawal*, 726 F.3d 235, 247 (2d Cir. 2013) (quoting *Morales v. Trans World Airlines*, 504 U.S. 374, 383 (1992)).  Thus, Congress' use of the term "related to" shows an intention to "reach broadly rather than narrowly, consistent with [the

term's] usual meaning."  *Id.* at 248; *see also Yager v. Vignieri*, 2017 WL 4574487, at *2 (S.D.N.Y. Oct. 12, 2017).

Plaintiff sufficiently alleges that the trade secrets are "related to a product or service used in or intended for use in interstate or foreign commerce." The FAC alleges that Plaintiff sends its patient samples from Hawaii to a lab in another state to be tested as part of its ordinary practice, FAC ¶¶ 11, 14, 73, and that the trade secrets at issue are client lists, which include "the types of services provided to and needed by each Client."  FAC ¶¶ 21, 23.  The types of services provided to and needed by a client are "related to" the testing of patient samples because they "concern" or "pertain" to that testing.  *See Agrawal*, 726 F.3d at 247 (quoting *Morales*, 504 U.S. at 383).  The patient samples are "used in" interstate commerce because some of those samples are sent to a reference laboratory in another state to be tested.  FAC ¶¶ 14, 73.  Thus, Plaintiff has sufficiently pled a nexus to interstate commerce, and the Motion to Dismiss for lack of subject matter jurisdiction is denied.

**B.     Unfair Competition (Count V)**

Defendants argue that Plaintiff's unfair competition claim (Count V) should be dismissed because the FAC does not sufficiently allege an injury to competition.  ECF No. 63-1 at 15.

10

HRS § 480-2(a) makes unlawful "unfair methods of competition." "Any person may bring an action based on unfair methods of competition declared unlawful by this section. HRS § 480-2(e). Courts should "give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act[,]" in construing this section. HRS § 480-2(b).

HRS chapter 480 is a remedial statute, and thus must be construed liberally. *Kawakami v. Kahala Hotel Inv'rs, LLC*, 142 Haw. 507, 520, 421 P.3d 1277, 1290 (2018) (citing *Davis v. Four Seasons Hotel Ltd.*, 122 Haw. 423, 430, 228 P.3d 303, 310 (2010)). To state a cause of action and recover money damages under HRS § 480-2(e), "a plaintiff must first satisfy the requirements of HRS § 480-13." *Gurrobat v. HTH Corp.*, 133 Haw. 1, 21, 323 P.3d 792, 812 (2014) (citing *Davis*, 122 Haw. at 434, 228 P.3d at 314). HRS § 480-13 requires "(1) a violation of HRS chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages." *Id.* The second element has two parts: (1) a plaintiff must allege an injury in fact to his or her "business or property"; and (2) a plaintiff must allege the "nature of competition." *Id.* And to allege the "nature of competition," a plaintiff must "allege that 'he or she was harmed as a result of actions of the defendant that negatively affect competition.'"

11

*Id.* (quoting *Davis*, 122 Haw. at 438, 228 P.3d at 318).  The plaintiff must also

allege *how* the conduct of the defendant would negatively affect competition.  *Id.*

(citing *Davis*, 122 Haw. at 437-38, 228 P.3d at 317-18); *see also Field, Tr. of*

*Estate of Aloha Sports Inc. v. Nat'l Collegiate Athletic Ass'n*, 143 Haw. 362, 431

P3d 735, 746 (2018), *reconsideration denied sub nom.,* 2018 WL 6418717 (Haw.

Dec. 5, 2018) ("This latter requirement is met by demonstrating how the

defendant's conduct negatively affects competition or harms fair competition.").

The FAC alleges the following concerning competition:

113. Maki misled Aloha Toxicology employees and
Clients regarding the closure of the lab and the purported
intent of the investors to shut down the business.

114. Maki lied by omission to the Aloha Toxicology
owners by telling them the lab lost key personnel,
without disclosing that she actually terminated those
personnel.

115. Aloha Toxicology has, as of the date this Complaint
was filed, lost its employees and Clients and stand [sic]
to lose millions in annual revenue and goodwill.

116. *The conduct engaged in by Defendants negatively*
*affects competition, because it promotes and condones*
*dishonesty in business, misappropriation of Trade*
*Secrets, and a conspiracy to destroy a firmly established*
*and successful Hawaii business.*

12

FAC ¶¶ 113-16 (emphasis added).[4]

This allegation is insufficient — to allege the nature of competition, elimination of a single competitor *without more* is not enough.  *See Sky-Med, Inc. v. Skydiving Sch., Inc.*, 2014 WL 12600271, at *2 (D. Haw. May 1, 2014) ("Although Plaintiff alleges that Defendant's goal is to put Plaintiff out of business, the elimination of a single competitor does not establish anticompetitive effect.") (citing *GSI Tech. v. United Memories, Inc.*, 2014 WL 1572358 at *3 (N.D. Cal. Apr. 18, 2014) ("While eliminating one player from a market will certainly cause injury to the eliminated party, that injury is not 'of the type the antitrust laws were intended to prevent,' so long as other participants are not harmed and competition remains in the market.")).

Plaintiff argues that Defendants created incentives for clients to use Defendants' services over competitors.  ECF No. 84 at 24-25 (citing *Gurrobat*). But Plaintiff misses a key component of *Gurrobat:* the plaintiff in that case provided sufficient evidence of how defendants' actions in lowering overall costs affected a number of competitors, including "law-compliant hotels, restaurants and

---

[4] In addition to allegations in the FAC, Plaintiff asks the court to consider declarations and testimony from the preliminary injunction hearing.  But because the court is not converting the Motion to a motion for summary judgment, the materials outside the FAC are not considered by the court.

banquet service providers." *Gurrobat*, 133 Haw. at 22, 323 P.3d at 813.  Here, in contrast, Plaintiff's vague allegations — specifically, that Defendants' actions create unfair competition because they promote "dishonesty in business, misappropriation of Trade Secrets, and a conspiracy" to destroy Aloha Toxicology — are conclusory and do not sufficiently allege *how* Defendants' actions negatively affect competitors (other than Aloha Toxicology).  *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) ("The antitrust laws, however, were enacted for the protection of competition not competitors." (internal citation and quotation marks omitted)).

Under Hawaii law, a plaintiff must allege harm to the plaintiff by the defendant's actions "that negatively affect competition." *Gurrobat*, 133 Haw. at 21, 323 P.3d at 812.  Plaintiff sufficiently alleges how it was harmed, but provides nothing but conclusory allegations to support the requirement of harm to competition.  Simply stating that a defendant acted "dishonestly" or in an illegal manner does not suffice to allege a harm to competition.  Nor is it sufficient to allege that a party obtaining trade secrets provides it with an unfair advantage over competitors.  There is no plausible allegation that Defendants' theft of Plaintiff's trade secrets impacted the market, other than shifting business from Aloha Toxicology to NextGen and Ohana Genetics.  Again, proof of harm to Aloha

Toxicology is not, standing alone, proof of harm to competition.  Accordingly,

Plaintiff's unfair competition claim (Count V) is dismissed.

## C.    Tortious Interference with Contractual Relations (Count VI)

Defendants argue that Plaintiff's tortious interference with contractual

relations claim (Count VI) should be dismissed because HUTSA preempts any

claim that is not independent of the misappropriation of trade secrets claim.  ECF

No. 63-1 at 21.[5]

> As a general matter,
>
> The Hawaii Supreme Court has set forth the elements of
> a claim for interference with contractual relations as
> follows: . . . 1) a contract between the plaintiff and a third
> party; 2) the defendant's knowledge of the contract;
> 3) the defendant's intentional inducement of the third
> party to breach the contract; 4) the absence of
> justification on the defendant's part; 5) the subsequent
> breach of the contract by the third party; and 6) damages
> to the plaintiff.

---

[5]  Defendants also argue that Plaintiff's tortious interference with contractual relations claim should be dismissed because Plaintiff never entered into contracts with its clients, which is a required element of the claim. ECF No. 63-1 at 23.  But the FAC does in fact allege that Aloha Toxicology had a contract relationship with its clients.  FAC ¶¶ 17-21, 121.  This is enough for Plaintiff to sufficiently allege this element of the claim for tortious interference with contractual relations.  This issue is ultimately moot, however, because the claim for tortious interference with contractual relations is preempted by HUTSA.

*Bodell Constr. Co. v. Ohio Pac. Tech, Inc.*, 458 F. Supp. 2d 1153, 1162 (D. Haw. 2006) (brackets omitted and formatting altered) (quoting *Weinberg v. Mauch*, 78 Haw. 40, 50, 890 P.2d 277, 287 (1995)).

Defendants assert that Plaintiff's tortious interference with contractual relations claim is preempted by HUTSA. Under HUTSA, a party may recover damages for the misappropriation of trade secrets. HRS § 482B-4. HUTSA's preemption provision, which is nearly identical to the Uniform Trade Secrets Act ("UTSA")[6] provision, provides in relevant part:

---

[6] The Hawaii Supreme Court reviewed the background of UTSA and HUTSA:

> The UTSA was drafted by the National Conference of Commissioners on Uniform State Laws (Commissioners) in 1979 and amended in 1985. . . . To this end, the UTSA created a model statutory cause of action for misappropriation of trade secrets. . . . Commissioners intended that the UTSA "be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it."

> The HUTSA became law in 1989. The HUTSA incorporates nearly verbatim the UTSA's definitions of "trade secret" and "misappropriation", as well as its remedies, statute of limitations and preemption provisions. Though the HUTSA does not contain a uniformity provision of its own, HRS [§] 1-24 states that "[a]ll provisions of uniform acts adopted by the State shall be so interpreted and construed as to effectuate their general purpose to make uniform the laws of the states and territories which enact them."

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 123 Haw. 314, 318, 235 P.3d 310, 313-14 (2010) (citations omitted and formatting altered).

> (a) Except as provided in subsection (b) this chapter displaces conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret.
>
> (b) This chapter does not affect:
> . . . .
>
> > (2) Other civil remedies that are not based upon misappropriation of a trade secret . . . .

HRS § 482B-8.

Under HUTSA, "misappropriation" is defined as: "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or . . . [d]isclosure or use of a trade secret of another without express or implied consent[.]"  HRS § 482B-2.  And a "trade secret" is defined as:

> [I]nformation, including a formula, pattern, compilation, program device, method, technique, or process that:
>
> > (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> >
> > (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.*

17

In *BlueEarth Biofuels, LLC v. Hawaiian Electric Co.*, 123 Haw. 314, 235 P.3d 310 (2010), the Hawaii Supreme court adopted the "same proof" standard to determine preemption — "[u]nder this standard, 'if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements of proof were necessary to establish it.'" *Id.* at 322, 235 P.3d at 318 (quoting *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 658 (E.D. Tenn. 2004)).  The claim will not be preempted by HUTSA, however, to the extent "the claim is 'based upon wrongful conduct[,] independent of the misappropriation of trade secrets.'" *Id.* (quoting *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 950 (W.D. Mich. 2003)).

The FAC alleges the following for the tortious interference claim:

121. Aloha Toxicology had contract and/or business relationships with its Clients.

122. Maki and Simbulan knew about Aloha Toxicology's contract and/or business relationships with its Clients.

123. Maki and / or Simbulan intentionally induced Aloha Toxicology's Clients to terminate their relationships with Aloha Toxicology and move their business to NextGen/Ohana Genetics.

124. Maki and / or Simbulan's intentional inducement of Aloha Toxicology's Clients to terminate their business relationships and move their business to NextGen/Ohana

> Genetics was not justified, because among other reasons, Maki improperly, secretly, without notice, without authorization, and without ratification terminated Aloha Toxicology's employees after misleading them regarding the purported closure of the lab and lack of interest in running the business by the owners.

FAC ¶¶ 121-124.

Defendants essentially argue that, under Plaintiff's alleged facts, Maki and Simbulan could not have contacted Aloha Toxicology's clients had they not misappropriated trade secrets about client contact information.  *See* ECF No. 63-1 at 22-23; *see also* ECF No. 90 at 11-12.  Thus, Defendants assert that Plaintiff's tortious interference claim is preempted under HUTSA.  *Id.*  The court agrees.

When reviewing the FAC as a whole, it becomes clear that: (1) the tortious interference claim simultaneously establishes a claim for misappropriation of trade secrets; and (2) that the alleged wrongful conduct under the tortious interference claim is intertwined with the misappropriation of trade secrets.  The FAC alleges that Aloha Toxicology invested "time, skill, and resources," FAC ¶ 21, into developing a detailed client list (including information about client preferences and characteristics), which was protected under the employee handbook, and that Maki and Simbulan then stole those clients.  *See* FAC  ¶¶ 20-30, 50.  Plaintiff's misappropriation of trade secrets claim relies on Maki and Simbulan using misappropriated trade secrets (such as client preferences and

19

characteristics) to obtain and retain Aloha Toxicology's clients.  The tortious

interference claim does the same.  Stated differently, the tortious interference claim

would, if true, "also simultaneously establish a claim for misappropriation of trade

secrets." *BlueEarth*, 123 Haw. at 322, 235 F.3d at 318.  Accordingly, the tortious

interference with contractual relations claim is preempted, and this claim is

dismissed.[7]

## D.    Conversion (Count VII)

In the Motion, Defendants argue that Plaintiff's conversion claim

(Count VII) is preempted by HUTSA.  ECF No. 63-1 at 25.  At the hearing,

however, both Plaintiff and Defendants agreed that the conversion claim, with

some limitations, was not preempted by HUTSA.  By agreement of the parties,

Plaintiff's conversion claim is limited to physical items[8] and does not include any

trade secrets that may be found on those items (e.g. a computer file that contains

---

[7]  At the hearing, Plaintiff requested leave to amend the FAC to replace the tortious interference with contractual relations claim with a tortious interference with business relations claim.  The court grants Plaintiff's request; however, Plaintiff may not amend the FAC to include any other new claims.

[8]  The FAC mentions the following physical items:
- (1) Levono Yoga 730 13 I5 Step High end laptop - $987.42
- (4) Computers with (4) Printers, (5) mouse, (2) cases, etc. - $2,026.01
- (3) Hotspot

FAC ¶ 128.

client information).  So limited, the conversion claim is not preempted by HUTSA, and this claim is not dismissed.

### E.    Unjust Enrichment (Count VIII)

Defendants argue that Plaintiff's unjust enrichment claim (Count VIII) should be dismissed as to NextGen and Ohana Genetics because the FAC does not plead that Plaintiff conferred a benefit on either NextGen or Ohana Genetics.  ECF No. 63-1 at 25.  The court agrees.

"[A] claim for unjust enrichment requires only that a plaintiff prove that he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust."  *Durette v. Aloha Plastic Recycling, Inc.*, 105 Haw. 490, 504, 100 P.3d 60, 74 (2004) (internal citations and editorial marks omitted).  The Hawaii Supreme Court explained unjust enrichment as follows:

> It is a truism that a person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or chooses in action, or in any way adds to the other's security or advantage.  One who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust.  And it is axiomatic that a person who has been unjustly enriched at the expense of another is required to make restitution to the other.

*Id.* at 502, 100 P.3d at 72 (internal citations, emphasis, and editorial marks omitted).

21

Other courts have addressed the meaning of "conferred a benefit."

For example, *Suture Express, Inc. v. Cardinal Health 200, LLC*, 963 F. Supp. 2d

1212 (D. Kan. 2013), states:

> "Confer" means to bestow, grant, give or contribute.
> Oxford English Dictionary, OED Online Version June
> 2013, available at www.oed.com. . . . While plaintiff's
> loss of business or "reduced market presence" may have
> benefited defendants, it was not a benefit conferred by
> plaintiff. . . . [*See*] RESTATEMENT (FIRST) OF
> RESTITUTION § 1 cmt. b (1937) (a person confers a
> benefit upon another if he gives to the other possession of
> or interest in something valuable, performs a valuable
> service, satisfies a debt or duty, or in any way adds to the
> other's security or advantage or saves the other from
> expense or loss). Here, plaintiff does not allege that an
> action by plaintiff benefited defendant. Rather, plaintiff
> alleges that defendants' actions benefited defendants to
> plaintiff's disadvantage. This is not sufficient to state an
> unjust enrichment claim.

*Id.* at 1230 (some citations omitted).

As to NextGen and Ohana Genetics, the FAC only alleges "NextGen

and/or Ohana Genetics were unjustly enriched by receiving compensation from

Aloha Toxicology Clients." FAC ¶ 141. Nowhere in the FAC does Plaintiff allege

that it conferred a benefit on NextGen or Ohana Genetics, thus Plaintiff fails to

sufficiently allege an unjust enrichment claim as to either NextGen or Ohana

Genetices, and the claim is dismissed as to those Defendants.

**F.    Spoliation (Count IX)**

Defendants argue that Plaintiff's spoliation claim (Count IX) should

be dismissed because "even if such a cause of action existed in Hawaii, Plaintiff

fails to meet the heightened pleading requirements of FRCP 9(b)."  ECF No. 63-1

at 27.

The question of whether a cause of action for spoliation (intentional or

negligent) exists under Hawaii law remains unanswered.  The Hawaii Supreme

Court last addressed this issue in *Matsuura v. E.I. du Pont de Nemours & Co.*, 102

Haw. 149, 166-68, 73 P.3d 687, 704-06 (2003).  *See also Jou v. Adalian*, 2017 WL

2990280, at *4 (D. Haw. July 13, 2017) (discussing *Matsuura*); *Jou v. Adalian*,

2016 WL 4582042, at *18 (D. Haw. Sept. 1, 2016) ("[T]he court is unaware of any

other Hawaii authority that has recognized whether the tort exists after *Matsuura*

was decided in 2003.").  In *Matsuura*, the Hawaii Supreme Court was presented

the certified question: "Does Hawai'i law recognize a civil cause of action for

damages for intentional and/or negligent spoliation of evidence?"  *Matsuura*, 102

Haw. at 166, 73 P.3d at 704.  *Matsuura* identified the elements of the tort for

intentional spoliation and negligent spoliation, as recognized in other jurisdictions,

but determined that the facts in that case did not state a claim for either intentional

or negligent spoliation.  *Id.* at 166-68, 73 P.3d at 704-06.  The Hawaii Supreme

Court thus declined to answer whether the tort was recognized under Hawaii law.

*Id.* at 168, 73 P.3d at 706.

Nevertheless, *Matsuura* identifies the following elements for

intentional spoliation:

> (1) the existence of a potential lawsuit; (2) the
> defendant's knowledge of the potential lawsuit; (3) the
> intentional destruction of evidence designed to disrupt or
> defeat the potential lawsuit; (4) disruption of the potential
> lawsuit; (5) a causal relationship between the act of
> spoliation and the inability to prove the lawsuit; and
> (6) damages.

*Id.* at 166, 73 P.3d at 704.  And the following elements for negligent spoliation:

> (1) the existence of a potential civil action; (2) a legal or
> contractual duty to preserve evidence that is relevant to
> the potential civil action; (3) destruction of that evidence;
> (4) significant impairment in the ability to prove the
> lawsuit; (5) a causal relationship between the destruction
> of evidence and the inability to prove the lawsuit, and
> (6) damages.

*Id.*  Thus, assuming Hawaii recognizes the torts, the following elements are shared

for both intentional and negligent spoliation: "(1) the destruction of evidence;

(2) the disruption or significant impairment of the lawsuit; and (3) a causal

relationship between the destruction of evidence and the inability to prove the

lawsuit."  *Id.* at 167, 73 P.3d at 705.

In relevant part, the FAC alleges:

> 144. Upon information and belief, Defendants had knowledge of a possible or actual legal action against them by Aloha Toxicology.
>
> 145. Defendants had and have a duty to preserve all evidence that is relevant to the Complaint.
>
> 146. Upon information and belief, one or more Defendants may have destroyed potential evidence relevant to the Complaint.
> . . . .
> 148. The destruction of evidence relevant to the Complaint may interfere with Aloha Toxicology's ability to prove one or more claims in this lawsuit.

FAC ¶¶ 144-46, 148.

Plaintiff's spoliation claim is vaguely pled, essentially only reciting some of the elements.  In the FAC, Plaintiff only makes vague claims that evidence *may* have been destroyed, and does not identify what type of evidence.  Plaintiff also does not identify how the destruction of evidence disrupts or significantly impairs the lawsuit.  Further, Plaintiff does not identify the causal relationship between the destruction of evidence and the inability to prove the lawsuit. Plaintiff's allegations are the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that do not meet

pleading standards.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). [9]

Thus, even if a cause of action for spoliation exists under Hawaii law, Plaintiff

fails to state a claim.  Accordingly, the spoliation cause of action (Count IX) is

dismissed.

## V.  **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is

GRANTED IN PART and DENIED IN PART with leave to amend.  Counts V, VI,

and IX are dismissed without prejudice in their entirety.  Count VIII is dismissed

without prejudice as to NextGen and Ohana Genetics.  Accordingly, Counts I, II,

and III remain as to all Defendants, Counts IV and VIII remain as to Maki and

Simbulan, and Count VII remains as to Maki.

The court will allow Aloha Toxicology an opportunity to file a

Second Amended Complaint ("SAC") to amend the FAC's deficiencies outlined in

this order, if it believes it can do so.  In a SAC, however, Aloha Toxicology may

not bring new claims, other than a claim for tortious interference with business

---

[9]  Because the facts alleged by Plaintiff do not meet the *Twombly* and *Iqbal* pleading standards under Rule 12, the court need not answer whether the higher pleading standard under Rule 9(b) applies to any possible spoliation claim.  *See* ECF No. 63-1 at 28.

relations.  A SAC (or a statement indicating that a SAC will not be filed) is due by

**February 28, 2019**.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 31, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*WHIC LLC v. NextGen Labs., Inc., et al.*, Civ No. 18-00261 JMS-RLP, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, ECF No. 63