IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIC LLC dba ALOHA TOXICOLOGY,<br><br>                Plaintiff,<br><br>  vs.<br><br>NEXTGEN LABORATORIES, INC.; OHANA GENETICS, INC.; HEIDI MAKI; STEPHANIE SIMBULAN; and DOE DEFENDANTS 1-20,<br><br>                Defendants. | Civ. No. 18-00261 JMS-WRP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, ECF NO. 113 |

## **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, ECF NO. 113**

### **I. INTRODUCTION**

On February 28, 2019, Plaintiff WHIC LLC dba Aloha Toxicology ("Plaintiff" or "Aloha Toxicology") filed an eight-count Second Amended Verified Complaint ("SAC") alleging claims against Defendants NextGen Laboratories, Inc. ("NextGen"), Ohana Genetics, Inc. ("Ohana Genetics"),[1] Heidi Maki ("Maki"),

---

[1] NextGen and Ohana Genetics are affiliated companies. During the relevant time period, NextGen purchased Ohana Genetics. For sake of brevity, the court will not distinguish between these two Defendants unless relevant, and will refer to NextGen as Ohana Genetics throughout the order.

1

and Stephanie Simbulan ("Simbulan") (collectively, "Defendants").  SAC, ECF No. 110.

Currently before the court is Defendants' Motion to Dismiss the SAC.  ECF No. 113.  Defendants move to dismiss with prejudice Count V (unfair competition, Count VI (tortious interference with business relations), and Count VII (conversion) for failure to state a claim upon which relief can be granted.  *Id.* at PageID #1767.  Defendants also move to dismiss the SAC for lack of subject matter jurisdiction.  *Id.*

Based on the following, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss the SAC, ECF No. 113, and Counts V and VI are dismissed with prejudice.  Plaintiff's request to amend the SAC is DENIED.

## II. BACKGROUND

A.    **Factual Background**

The factual allegations[2] in the SAC are as follows:  Aloha Toxicology is a drug testing lab formed in 2006.  SAC ¶ 11, ECF No. 110.  Aloha Toxicology's clients include physicians, clinics, substance abuse treatment

---

[2] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

programs, rehabilitation facilities, and individuals across Hawaii. *Id.* ¶ 19. To obtain and serve those clients, Aloha Toxicology has invested "time, skill, and resources" into "gathering, developing, and compiling [client] information," such as services requested, financial data, and history of client accounts. *Id.* ¶ 21, 22. Aloha Toxicology's client lists are only accessible on Aloha Toxicology computers after logging in with a password. *Id.* ¶ 24. Under Aloha Toxicology's Employee Handbook, trade secrets are to remain confidential, trade secrets are expressly defined, and client lists are included in the definition. *Id.* ¶¶ 26-28. Maki and Simbulan were aware of this provision of the employee handbook. *Id.* ¶¶ 29-30.

  Maki was paid a full-time salary to work as the sales and operations manager of Aloha Toxicology from April 2014 until June 2018. *Id.* ¶¶ 31, 33. Simbulan was paid a full-time salary to work as a clinical laboratory specialist at Aloha Toxicology from October 2017 to June 2018. *Id.* ¶¶ 32-33. While being paid to work full-time at Aloha Toxicology, Maki and Simbulan began working for a competitor, Ohana Genetics. *Id.* ¶ 34. Neither Maki nor Simbulan informed Aloha Toxicology's owners that they were working for a competitor. *Id.* ¶¶ 36-37. While setting up a new lab at Ohana Genetics, Maki and Simbulan came to work as little as one day per week at Aloha Toxicology and lied to its employees by

saying that they were working on a research project at a partner (not a competitor) lab. *Id.* ¶¶ 38-39.

In June 2018, Maki told Aloha Toxicology employees that Aloha Toxicology could be shut down by an accreditation agency for up to six months, employees would be laid off during that shutdown, and the owners did not want to continue the business because of the issues with the accreditation agency. *Id.* ¶¶ 47, 48. Maki told Simbulan and Ronald Li, an Aloha Toxicology employee, to resign to protect their licenses and future job prospects from the stigma of a "bad lab" being attached to them. *Id.* ¶ 49. Maki told another employee, Andee Okamura, who was not yet certified, that she could state that she was laid off by Aloha Toxicology in order to obtain unemployment benefits. *Id.* Maki told Aloha Toxicology employees that she had found another company, Ohana Genetics, to take on Aloha Toxicology's clients and directed employees to send samples for testing to Ohana Genetics. *Id.* ¶ 50. In actuality, the owners had no intention to shut down the lab or to send samples to a competitor lab. *Id.* ¶ 51. Shortly thereafter, Maki resigned from Aloha Toxicology, telling the owners that the lab was no longer a "viable business" because of the failure of a proficiency test, loss of key personnel, and the inability to test samples. *Id.* ¶ 53. After resigning, Maki

4

never returned several computers, printers, a hotspot, and related equipment that she had purchased with Aloha Toxicology funds. *Id.* ¶¶ 54-55.

As a result of Maki's actions, the lab at Aloha Toxicology was temporarily shut down and "all or a substantial number" of its clients were now doing business with Ohana Genetics. *Id.* ¶¶ 57-58.

**B.     Procedural History**

On July 5, 2018, Plaintiff filed a nine-count Verified Complaint, seeking damages and injunctive relief. ECF No. 1. On July 23, 2018, Plaintiff filed a Motion for Preliminary Injunction, ECF No. 10, and hearings were held on that motion on August 22 and September 4, 11, 12, 2018. *See WHIC LLC v. NextGen Labs., Inc.*, 341 F. Supp. 3d 1147, 1157 (D. Haw. 2018). "The court heard testimony from eight witnesses, reviewed the declarations of three witnesses, and admitted numerous exhibits into evidence." *Id.* On September 17, 2018, the court granted the preliminary injunction. *Id.* at 1168.

Meanwhile, Plaintiff filed the First Amended Complaint ("FAC") on September 12, 2018, solely to clarify and allege that conduct occurred in interstate commerce. ECF No. 54. The FAC contained the following claims: Violation of Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 (Count I); Violation of Hawaii Uniform Trade Secrets Act ("HUTSA"), HRS chapter 482B (Count II);

5

Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (Count III); Breach of the Duty of Loyalty (Count IV); Unfair Competition, HRS chapter 480 (Count V); Tortious Interference with Existing Contractual Relations (Count VI); Conversion (Count VII); Unjust Enrichment (Count VIII); and Spoliation of Evidence (Count IX).  ECF No. 54.

On September 26, 2018, Defendants filed a Motion to Dismiss the FAC.  ECF No. 63.  On January 31, 2019, the court granted in part and denied in part the Motion to Dismiss the FAC, with leave to amend ("January 31 Order").  ECF No. 102.  The January 31 Order ruled that:

> Counts V, VI, and IX are dismissed without prejudice in their entirety.  Count VIII is dismissed without prejudice as to NextGen and Ohana Genetics.  Accordingly, Counts I, II, and III remain as to all Defendants, Counts IV and VIII remain as to Maki and Simbulan, and Count VII remains as to Maki.

*Id.* at PageID #1688.

On February 28, 2019, Plaintiff filed the SAC.  ECF No. 110.  The SAC contains the following claims: Violation of DTSA, 18 U.S.C. § 1836 (Count I—brought against all Defendants); Violation of HUTSA, HRS chapter 482B (Count II—brought against all Defendants); Violation of RICO, 18 U.S.C. § 1962 (Count III—brought against all Defendants); Breach of the Duty of Loyalty (Count IV—brought against Maki and Simbulan); Unfair Competition,

HRS chapter 480 (Count V—brought against all Defendants); Tortious Interference with Existing Business Relations (Count VI—brought against all Defendants); Conversion (Count VII—brought against Maki only); and Unjust Enrichment (Count VIII—brought against Maki and Simbulan only). *Id.*

Counts I to IV and VII are the same in the SAC as the FAC. ECF Nos. 54, 110. But there are major differences between the FAC and the SAC, such as: (1) Count VI was Tortious Interference with Existing *Contractual* Relations in the FAC and is Tortious Interference with Existing *Business* Relations in the SAC; and (2) Count IX (Spoliation of Evidence) from the FAC is not included in the SAC. *Id.*

### III. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners*, LLC, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet — that the court must accept as true all of the allegations contained in the complaint — "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief.  *Id.* at 679.

///

///

///

///

///

///

///

## IV. **DISCUSSION**

Defendants argue that the SAC fails to cure the defects the court previously found in Counts V, VI, and VII of the FAC.[3] ECF No. 113 at PageID #1772. The court agrees only as to Counts V and VI.[4]

///

///

///

---

[3] Defendants also "preserve" their argument that the court lacks subject matter jurisdiction because Plaintiff has not alleged a sufficient nexus to interstate commerce to implicate federal statutes. ECF No. 113 at PageID #1767, 1792. As Defendants recognize in their Motion, the court already rejected this argument in the January 31 Order. Further, it is unnecessary to "preserve" their argument once it was made in the first Motion to Dismiss. *Cf. Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (holding that plaintiff need not replead claims dismissed with prejudice in a subsequent amended complaint to preserve those claims for appeal).

[4] Plaintiff argues that "[b]ecause the Court has already considered matters outside of the pleadings, including numerous exhibits and witness testimony that are now part of the record as part of the evidentiary hearing, the Motion should be treated as one for summary judgment . . . ." ECF No. 131 at PageID #1852. Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Exercising its discretion, the court excludes all matters outside of the pleadings, and thus will not convert this motion to one for summary judgment. *See Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011) (finding the decision to convert a Rule 12 motion to one for summary judgment is discretionary).

## A. Unfair Competition (Count V)

Defendants argue that Plaintiff's unfair competition claim (Count V) should be dismissed because the SAC (like the FAC) fails to sufficiently allege an injury to competition. ECF No. 113-1 at PageID #1775. The court agrees.

In the January 31 Order, the court dismissed without prejudice the FAC's unfair competition claim for failure to allege an injury to competition, finding that Plaintiff's allegations were "conclusory and do not sufficiently allege *how* Defendants' actions negatively affect competitors (other than Aloha Toxicology)." ECF No. 102 at PageID #1676.

In the SAC, Plaintiff attempts to fix this deficiency by alleging that the market for toxicology services is "narrow and discrete." SAC ¶ 119. Plaintiff alleges that five competitors provide toxicology services in Hawaii, but only one (other than Plaintiff and Defendants) is based in and does its testing in the state of Hawaii—S&G Labs, located in Kona and not on the island of Oahu. *See id.* ¶¶ 122-24. Other than S&G Labs in Kona, all other toxicology labs ship samples to the mainland for testing. *See id.* ¶ 127. Finally, Plaintiff alleges that through the actions of Ohana Genetics, consumers were "essentially forced to send their samples to S&G" in Kona, Hawaii, "or across the Pacific Ocean to the mainland." *Id.* ¶ 127.

*Les Shockley Racing, Inc. v. National Hot Rod Association*, 884 F.2d 504 (9th Cir. 1989) recognized that "convergence of injury to a market competitor and injury to competition is possible when the relevant market is both narrow and discrete and the market participants are few." *Id.* at 508-09; *see also Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1448 (9th Cir. 1988); *Kaiser Found. Health Plan, Inc. v. Hawaii Life Flight Corp.*, 2017 WL 1534193, at *10 (D. Haw. Apr. 27, 2017) ("[Plaintiff] has alleged that it has only one competitor. As such, the market appears to be narrow and raises the possibility that injury to [plaintiff] could converge with injury to competition." (citations omitted)).

But *Les Shockley Racing, Inc.* still required plaintiffs (no matter how narrow or discreet the market) to allege *how* the injury affected competition. *Les Shockley Racing, Inc.* held that plaintiffs failed to establish an injury to competition because "none of the factual allegations in plaintiffs' complaint suggests a market in which the removal of the eight plaintiffs from the pool of competing sellers would adversely and unreasonably affect overall competitive conditions. Instead, plaintiffs' complaint is disturbingly silent about the effect of their removal on the [market]." 884 F.2d at 509; *see also Kaiser Found. Health Plan, Inc.*, 2017 WL 1534193, at *10 (finding the same and reasoning that the first amended complaint should have made "allegations supporting the restraint's

11

anticompetitive effects, such as output decreases or price increases" (citations and quotation marks omitted)). The same problem afflicts the SAC in this case.

The SAC is "disturbingly silent" about how Defendants' actions—such as representing to Aloha Toxicology's employees and clients that it was being bought out or shut down, SAC ¶ 125—affected the toxicology market as a whole. Further, the SAC does not allege that Aloha Toxicology's actions have restrained competition by disrupting "price setting, resource allocation, market entry, or output designation" in the toxicology market. *Les Shockley Racing,* 884 F.2d at 508; *see, e.g.*, *Field, Tr. of Estate of Aloha Sports Inc. v. Nat'l Collegiate Athletic Ass'n*, 143 Haw. 362, 375, 431 P.3d 735, 748 (2018) (listing how the defendant's actions negatively affected competition by "(1) restricting the transfer of ownership of bowl games contingent upon recertification; (2) leading to lower prices for the sale of bowl sponsoring agencies because of uncertainty as to whether a bowl will gain recertification; and (3) acting as a restriction on output that would result in a loss of financial benefits to schools and consumers who would have otherwise participated in a given bowl"); *Gurrobat v. HTH Corp.*, 133 Haw. 1, 22, 323 P.3d 792, 813 (2014) (holding that defendants' actions negatively affected competition because they "allowed [defendants] to charge lower base

prices than law-compliant competitors, thereby reducing 'fair competition' in the market for hotels, restaurants, and banquet service providers.").

It is telling that the SAC fails to allege that prices have increased for toxicology services, the quality of toxicology services has decreased, or that overall access to toxicology services has decreased. *Cf. Prime Healthcare Servs., Inc. v. Serv. Employees Int'l Union*, 642 F. App'x 665, 667 (9th Cir. 2016) (holding that plaintiff did not sufficiently plead a harm to competition and determining that plaintiff does not "allege that the Defendants' actions actually caused health care consumers to face higher prices or a reduction in quality of care, quantity of services, or overall choice of providers").

And even if the SAC had made some showing of *how* the toxicology market was harmed, any such harm would be temporary and thus not significant enough to constitute an injury to competition. "To constitute an injury to competition, the restraint must be of significant magnitude and more than trivial." *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998) (citations and quotation marks omitted). Thus, a temporary decline in the number of competitors (or in quantity, quality, or efficiency) is not a significant restraint on trade. *See id.* at 952. Because Aloha Toxicology was sidelined by Defendants for a period of a few months at most, any harm to competition was

temporary and thus not sufficiently significant to establish an injury to competition for the purposes of HRS chapter 480.[5]

Accordingly, the SAC has the same problem the court found in the FAC: "[t]here is no plausible allegation that Defendants' [actions] . . . impacted the market, other than shifting business from Aloha Toxicology to NextGen and Ohana Genetics." ECF No. 102 at PageID # 1676. And Plaintiff's unfair competition claim (Count V) is dismissed with prejudice because further amendment would be futile.

---

[5] Plaintiff essentially argues that Hawaii law (specifically, *Field* and *Gurrobat*) does not require a showing that the restraint be significant (and thus more than temporary). ECF No. 131 at PageID #1860. The court disagrees.

HRS § 480-3 provides that HRS chapter 480, which governs, among other things, unfair methods of competition, "shall be construed in accordance with judicial interpretations of similar federal antitrust statutes . . . ." More specifically, HRS § 480-2, which makes unlawful unfair methods of competition, provides that "[i]n construing this section, the courts . . . shall give due consideration to the . . . decisions of the . . . federal courts interpreting section (5)(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)) . . . ." HRS § 480-2(b); *see also Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262, 141 P.3d 427, 435 (2006) (adopting a federal test "[g]iven [the court's] obligation under HRS §§ 480-3 and 480-2(b) to apply federal authority as a guide in interpreting HRS ch. 480"); *Haw. Cmty. Fed. Credit Union v. Keka*, 94 Haw. 213, 228, 11 P.3d 1, 16 (2000) (discussing the relationship between HRS chapter 480 and federal judicial interpretation). And in fact, Plaintiff itself relies on the decisions of federal courts interpreting federal antitrust statutes, such as *Les Shockley Racing, Inc.*

As discussed above, the Ninth Circuit has interpreted federal antitrust statutes to require a showing of "more-than-temporary" harmful effects on competition to establish an injury to competition claim. *See Adaptive Power Sol., LLC*, 141 F.3d at 952. Thus, it is entirely appropriate to require a showing of "more-than-temporary" harm under HRS chapter 480. And, while neither *Field* nor *Gurrobat* specifically mention the "more-than-temporary" requirement, those cases do not reject the requirement either. It is no surprise then that Plaintiff makes no argument on the matter, except the bare assertion that cases that have the "more-than-temporary" requirement "conflict with *Field* and *Gurrobat*." ECF No. 131 at PageID #1860. Plaintiff cannot pick and choose what aspects of federal case law it wishes to rely upon.

14

**B.     Tortious Interference with Business Relations (Count VI)**

Plaintiff amended its tortious interference with contractual relations claim with a tortious interference with business relations claim.  Plaintiff also now brings the tortious interference claim against all Defendants, not just Maki and Simbulan.  But Defendants argue that Plaintiff's new claim suffers from the same issue as the previous claim—preemption by HUTSA.  ECF No. 113-1 at PageID #1787.  The court agrees.

Under Hawaii law, "tortious interference with business relations involves conduct that is not directed at the plaintiff itself, but at a party with which the plaintiff has or seeks to have a relationship." *Agbannaoag v. Ocwen Loan Servicing, LLC*, 2016 WL 6436620, at *8 (D. Haw. Oct. 25, 2016) (citing *Kailua Local Cab, Inc. v. AJA Motors Corp.*, 257 P.3d 1219, 2011 WL 1334960, *11 (Haw. Ct. App. 2011)).  The elements of a tortious interference with business relations claim are:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

*Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 113 Haw. 77, 116, 148 P.3d 1179, 1218 (2006) (citations and quotation marks omitted). "This tort does not prevent legitimate business competition — rather, the intent element 'denotes purposefully improper interference . . . and requires a state of mind or motive more culpable than mere intent.'" *Standard Register Co. v. Keala*, 2014 WL 3420785, at *8 (D. Haw. July 11, 2014) (quoting *Haw. Med. Ass'n*, 113 Haw. at 116, 148 P.3d at 1218)).

The court set forth the law concerning HUTSA preemption in the January 31 Order and will not repeat it here. *See* ECF No. 102 at PageID #1678-80. In short, a claim is preempted by HUTSA to the extent that "the claim is based upon wrongful conduct, independent of the misappropriation of trade secrets." *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 123 Haw. 314, 322, 235 P.3d 310, 318 (2010) (citation and editorial marks omitted).

In the January 31 Order, the court found that HUTSA preemption applied to the tortious interference with contractual relations claim because Maki and Simbulan could not have contacted Aloha Toxicology's clients without misappropriating trade secrets about client contact information. *See* ECF No. 102 at PageID #1681. Further, the January 31 Order concluded that "the alleged wrongful conduct under the tortious interference claim [was] intertwined with the

16

misappropriation of trade secrets," *id.*, because "the misappropriation of trade secrets claim relie[d] on Maki and Simbulan using misappropriated trade secrets (such as client preferences and characteristics) to obtain and retain Aloha Toxicology's clients." *Id.* The court reaches the same conclusions concerning the SAC's tortious interference with business relations claim.

The wrongful conduct alleged in the SAC's tortious interference claim is similar to that alleged in the FAC — that Defendants lied to Aloha Toxicology's clients and employees, inducing the employees to shut down the laboratory and the clients to cease doing business with Aloha Toxicology. SAC ¶¶ 145-50. This alleged wrongful conduct is intertwined with Defendant's use of misappropriated trade secrets, which contained information about clients and employees. Accordingly, the tortious interference with business relations claim is preempted, and this claim is dismissed with prejudice against all Defendants because further amendment would be futile.

## C. Conversion (Count VII)

At the January 14, 2019 hearing on the first Motion to Dismiss, Plaintiff and Defendants agreed that the conversion claim, with some limitations, was not preempted by HUTSA. *See* ECF No. 102 at PageID #1682. By agreement of the parties, Plaintiff's conversion claim was limited to physical items and did

17

not include any trade secrets that may be found on those items. *Id.* In the January 31 Order, the conversion claim was (so limited) not dismissed. *Id.* at PageID #1683. Plaintiff did not change the conversion claim language from the FAC to the SAC, including the misappropriation of trade secrets language, *see* SAC ¶ 156. Defendants argue that Plaintiff's conversion claim in the SAC "continues to rely upon alleged misappropriation of trade secrets . . . [t]herefore, this claim is preempted by HUTSA." ECF No. 113-1 at PageID #1773. Plaintiff acknowledges that this trade secrets language was included in error. ECF No. 131 at PageID #1862. Once again, the conversion claim — limited to physical items and not including any trade secrets found on those items — is not preempted by HUTSA, and this claim (so limited) is not dismissed.[6]

///

///

---

[6] Defendants also argue that Aloha Toxicology fails to allege the third element of a conversion claim — illegal use or abuse of chattel. ECF No. 113-1 at PageID #1790. This argument is meritless. If Defendants are asserting that conversion requires that the chattel be used to commit another tort or a crime, *see* ECF No. 113-1 at #1792, ECF No. 137 at PageID #1928, that is not required to state a claim for conversion. *See Freddy Nobriga Enter., Inc. v. State, Dep't of Hawaiian Home Lands*, 129 Haw. 123, 130, 295 P.3d 993, 1000 (Haw. Ct. App. 2013) ("Conversion may result from any wrongful exertion of dominion over another's property in denial or inconsistent with the owner's rights therein, even for an indefinite period of time.") (citing *Tsuru v. Bayer*, 25 Haw. 693, 697 (1920)); *see generally* Restatement (Second) of Torts § 222A (1965). Thus, contrary to Defendants' assertions, Plaintiff need not assert that Defendants used the chattel for misappropriation of trade secrets or unfair competition.

18

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Counts V and VI are dismissed with prejudice. Accordingly, Counts I, II, III, IV, VII, and VIII remain. Plaintiff's request to amend the SAC is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 28, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*WHIC LLC v. NextGen Labs., Inc., et al.*, Civ No. 18-00261 JMS-WRP, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, ECF No. 113